WntsiiT, L,
delivered the opinión of the Court.
This case comes to this Court upon bill and cross> bill.
In November, 1855, the complainant sold to, the* defendant a tract of land, upon which he resided in¡ Warren county, including some valuable mill's thereon., together with some personal estate. The consideration of the entire purchase was $7,00,0, $1,300 of which the defendant paid in cash, and executed his note for the residue, due the first of April, 1850, at which time he was to have possession and a deed in fee-simple, upon completing the payment of the purchase money.
He took of complainant a title bond to that effect, in which there is a .stipulation that the tract of land shall contain 567J acres; and they mutually agreed that a survey should be made by the county surveyor-between that time and the first of April, and prior to. *644 the making of the deed, with a .view to ascertain the exact quantity.
The land sold was made up of various small tracts, which lie adjoining each other; and they were described by metes and bounds with great particularity in the title bond.
On the first of April, 1856, defendant appeared, demanded and received possession of the tract of land and other property, and has held it and resided upon it ever since, .save as hereinafter shown.
He averred his ability to pay the purchase money at the time, and his willingness to do so upon receiving a deed.
It appears, that about the time of the purchase, one Wilkinson had possession of, and ^claimed about fifty acres within the bounds of the tract, and that a suit was pending 1 in the name of one Black, under whom complainant derived title, and for complainant’s benefit, to recover the same of Wilkinson. But neither complainant or defendant then regarded Wilkinson’s claim as of any avail, or at all in the way of the trade between them.
The county surveyor had made two surveys of the land, in one of which he found the quantity to be 611 acres, and in the other 567J- acres.
But the defendant affected not to be satisfied with these surveys. Finally, however, after he had examined them, and after a good deal of discussion as to the boundaries of the land and the nature of the title, he agreed to accept a deed, and pay the unpaid purchase money. And on the 24th of April, 1856, complainant executed to him a deed in fee simple, with full cove *645 nants of warranty, which he accepted; caused complain-ánt to acknowledge it before the clerk, and oh the same day had it duly registered.
But he still did not complete the payment of the purchase money; but on the same day, after the registration of the deed, presented to complainant, in writing, various objections to the title, which seem to have been frivolous and unfounded.
The complainant, however, attempted to remove them, and caused one Mercer to execute a quit-claim deed to the land to the defendant, in which he disclaimed all interest, and recited that he made the conveyance to satisfy the defendant.
The defendant still did not pay the residue of the purchase money, and complainant has obtained judgment at law for the same; and also filed an attachment bill, and has attached certain personal estate of defendant to pay the debt.
The object of the cross-bill is to stay, by injunction, the collection of the remaining unpaid purchase money, until complainant shall exhibit a valid and connected chain of title to the land, and if any be lost by better title, an abatement for that; and, also, that an accurate survey be had, and an abatement for any deficiency in quantity.
The clerk and master, upon a reference to him, reported the land taken by the Wilkinson suit at forty-four acres, and the deficiency in quantity at nine acres— in all fifty-three acres; and that, as to the residue of the tract, the title was valid.
To this report the defendant filed only two exceptions ; first, because the clerk and master had reported the *646 title of Young good to tbe whole tract, except fifty-three acres, when, in fact, he does not show a good and valid title to any portion of said land; second, because he only allowed defendant credit at $9.50 per acre for the deficit, when the -proof showed the value of said deficit, as a part of the whole tract, to be $15 per acre.
The Chancellor overruled the exceptions on both sides, and decreed in accordance with the report, which was confirmed, that complainant had a valid title to the entire tract, and that it contained the proper quantity, except the fifty-three acres; and, as to the value of that, gave a decree against complainant and his sureties in a refunding bond, executed in the cause upon a dissolution of defendant’s injunction upon the judgment at law, which complainant had been allowed to collect.
To this decree complainant submits, and the defendant appeals to this Court.
We think the Chancellor’s decree is correct.
The counsel of defendant have assumed in argument here, that the decree is erroneous upon several grounds, all of which we deem untenable.
In the first place, the bill of the complainant can not, as they insist, be regarded as one seeking the specific performance of the contract between complainant and defendant. It has none of the features of such a bill. Its only object is to attach and sell the defendant’s estate to pay the remaining purchase money. It does not even seek to enforce a lien upon the land. He cannot be regarded as standing here upon the title bond and a bill to enforce its performance. He has accepted a deed with covenants of warranty, and has *647 possession, and is in no condition to ask for a deraignment of title, as be would be if be stood . upon an executory contract. The case of Cunningham v. Sharp, 11 Hum., 116, to which we have been referred, is, therefore, wholly unlike this. The position assumed for him, that he did not freely and fairly accept the deed, is, we think, entirely unfounded. From the facts in this record, we have no doubt that it was his purpose, from the beginning, to obtain the deed and the possession of the property without paying for it, until such time as it suited his convenience to do so.
Neither is there any foundation for the position assumed, that complainant was guilty of fraud in the sale of this land, upon which to base a ground for the interference of a Court of Equity. No such thing is alleged or pretended in the answer to the original bill, or in the cross-bill. And in the amendment to the cross-bill it is evident the charge is not earnestly insisted on. And, if it were, it is denied in the answer, and not sustained in the proof.
The deed, in addition to the covenant of general warranty, which was all the title bond required, contains covenants of seizin, right to convey, and that the land is free from incumbrances. And it is said, if complainant had no title, a Court of Chancery may relieve on these covenants, because there was an instantaneous breach of them.
A conclusive answer to this is, that defendant no where, either in his bill or answer, alleges or avers any want of seizin or title in complainant, or the existence of any valid incumbrance, much less does he show any such thing by proof.
*648 He simply says, the complainant has failed to produce such a title as he is entitled to receive; that he is unwilling to rescind the contract, inasmuch as he has gone on the land to live, and has made valuable improvements on it, and he asks for an injunction against the purchase money until the complainant shall exhibit his title. And in the amended bill he alleges that certain persons, by name, claim small portions of the land; but does not pretend to aver that these claims have any validity whatever. As to the covenant against in-cumbrances, it was incumbent on the defendant, before he could claim anything under it in his cross-bill, to aver and make out, by proof, the paramount title with all the particularity of a plaintiff in ejectment. Rawle on Covenants for Title, (2d ed.,) 87, 135, note 1, 147; Bickford v. Page, 2 Mass., 461.
And as to the covenants of seizin and right to convey, it was certainly necessary to negative the words of the covenant, and, perhaps, in the proof, to take some steps towards showing a breach of the covenants. Rawle, 84, 87, 88.
So that if defendant, upon his cross-bill, be regarded as in the proper form under the effect of the 9th section of the act of 1852, ch. 365, because complainant failed to demur and answered, yet these covenants will not avail him, because he has shown no breach of them.
We put out of the case altogether the claim of Wilkinson, and any deficiency in the area of the tract, because defendant was allowed for that in the decree, as much, certainly, as he was entitled to.
The settled rule, however, is, where there has been no eviction, a Court of Chancery will not rescind the *649 contract, or stay the collection of the purchase money, if the case be free of fraud, for a mere defect of title, but will leave the party to his remedy upon the covenants taken. Woodruff v. Bunce, 9 Paige, 443; 1 Johns. Ch. R., 218; 2 Johns. Ch. R., 519; 8 Hum., 516-519; 4 Hum., 99.
And this is so' if the covenants have been actually broken, unless the grantor is insolvent, in which event a Court of Equity may restrain him from proceeding to collect the whole amount due for the purchase money, and may offset the damages occasioned by the breach of the covenant of seizin, &e., against such unpaid purchase money. 9 Paige, 443, 444; 2 Johns. Ch. R., 519; 4 Hum., 66-68.
But here complainant is solvent, and there is no averment to the contrary.
It follows, if complainant’s title be defective, defendant can have no relief in this proceeding.
But we have little doubt, from what we see in this record, that though the title, perhaps, is not at present so made out as that defendant would be obliged to accept it, if this were an application for a specific performance; yet, that, with proper care and labor, a valid title may be shown in complainant.
Decree affirmed, with costs.